# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

EDWARD TOWLE,

Plaintiff,

v.                                              Case No. 11-CV-542-JPS

BOARD OF EDUCATION SCHOOL
DISTRICT OF BROWN DEER,
DEBORAH KERR, and
SCHOOL DISTRICT OF BROWN DEER,

Defendants.                    ORDER

---

In this civil suit, Plaintiff Edward Towle ("Mr. Towle") alleges
numerous claims against Defendants Board of Education School District of
Brown Deer, Dr. Deborah Kerr, and School District of Brown Deer
(collectively "the District") in relation to his placement on paid administrative
leave. (Second Amended Complaint ("SAC"), Docket #1-1). Mr. Towle
initially filed this action in Milwaukee County Circuit Court and, on June 6,
2011, the District removed the case to federal court. (Docket #1). This case has
languished for the last five years due to the parties' numerous requests for
mediation.

This matter comes before the Court on the District's motion for
summary judgment, filed on May 18, 2016. (Docket #17). On July 12, 2016, Mr.
Towle filed his opposition (Docket #69) and, on August 12, 2016, the District
filed its reply (Docket #83). As such, the motion for summary judgment is
fully briefed and ready for disposition.[1]

---

[1] The Honorable Judge Rudolph T. Randa presided over the vast majority of
this case. However, due to the unavailability of Judge Randa, this action was
recently reassigned to this branch of the Court on August 2, 2016.

To begin, however, the Court finds it necessary to briefly discuss the claims presented in the SAC, the operative complaint in this matter, because the parties do not agree on this issue. The SAC lists eight claims: (1) Breach of Contract; (2) Defamation; (3) Tortious Interference with Contracts and Potential Contracts; (4) Violation of Due Process Under Wisconsin Constitution; (5) Violation of Due Process Under United States Constitution; (6) Breach of Contract: Memorandum of Understanding; (7) Breach of Covenant of Good Faith and Fair Dealing in Employment Contract; and (8) Breach of Covenant of Good Faith and Fair Dealing in Memorandum of Understanding. (SAC, Docket #1-1). On May 18 2016, Judge Randa granted the parties' joint motion to dismiss the Sixth and Eighth Claims. (Docket #65).

Throughout the course of summary judgment briefing, it became apparent that the parties disagreed over the fifth claim involving a due process violation under the United States Constitution. As the only federal claim alleged, and as discussed more in detail below, the nature of this claim becomes significant when determining the Court's jurisdiction over this case.

The District interprets the SAC to bring a property interest claim only under the Wisconsin Constitution, whereas Mr. Towle argues he was deprived of a property interest without due process of the law in violation of the Wisconsin Constitution *and* the United States Constitution. (*Compare* Def's Opening Br. at 11 *with* Pl's Opp. at 78). On August 30, 2016, Mr. Towle elaborated this point when he filed a motion to clarify the scope of the fifth claim, among other things. (Docket #88).[2]

---

[2]This motion has not finished briefing, however, the Court finds it necessary to address the issue prior to deciding the pending motion for summary judgment.

Case 2:11-cv-00542-JPS   Filed 09/29/16   Page 2 of 23   Document 92

The fourth claim in the SAC clearly alleges both a liberty and property interest protected by the Wisconsin Constitution. (SAC ¶ 40) ("Mr. Towle has a liberty and property interest…."). The fifth claim, under the United States Constitution, however, makes no mention of a property interest, and instead states, "Defendants' conduct deprived him a liberty interest without due process of the law," and that he suffered a loss of economic opportunity due to the District's stigmatizing conduct. (SAC ¶¶ 45-46).

Mr. Towle urges the Court to find that his fifth claim—Violation of Due Process Under the United States Constitution—is sufficient to state a claim that the District deprived him of property interests as well as liberty interests in violation of the due process clause of the United States Constitution. (Docket #89 at 6). The Court construes all pleadings liberally, however, it will not read into complaints claims that are explicitly not present. Indeed, the distinction between the fourth and fifth claims is telling—the fourth claim explicitly alleges both liberty and property interest claims whereas the fifth claim only alleges a liberty interest. The District has filed a summary judgment motion on the presumption that the only federal claim in this action alleges a deprivation of a liberty interest without due process. (*See* Defs' Opening Br. at 4, 11). As such, the District would be significantly prejudiced if the Court were to read into the SAC a claim that is clearly not there. The SAC was filed over *five years ago*, and now is not the time to clarify the claims at issue in this case.

Accordingly, the Court will address the motion for summary judgment with the clear understanding that the federal claim in this case—the fifth claim—involves only a liberty interest. The Court will address Mr. Towle's

alternative request to amend the SAC following the determination of the issues presented on summary judgment.

1.    FACTUAL BACKGROUND

This case involves Mr. Towle's employment as the Business Manager with the District and his placement on administrative leave in 2009. Before delving into the specifics, however, the Court finds it necessary to briefly discuss the parties' factual submissions. Along with their motion for summary judgment, the District submitted proposed findings of fact ("DPFF") (Docket #62) in accordance with Civil Local Rule 56(b)(1)(B). Mr. Towle submitted a response to those proposed findings (Docket #75) along with his own additional proposed findings of fact (Docket #76). The District then submitted a reply to its own proposed findings (Docket #85) along with a response to Mr. Towle's additional proposed findings of fact (Docket #84).

The Seventh Circuit has emphasized the importance of local rules in regards to findings of fact because they "assist the court by organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence." *Bordello v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000) (quoting *Markham v. White*, 172 F.3d 486, 490 (7th Cir.1999). Mr. Towle's responses to the District's facts, however, are larded with obfuscation, argument, improper denials, and evasion. To give but one example, the District's proposed finding of fact No. 18 states: "Dr. Kerr was shocked as Mr. Towle had never told her about the District's checking accounts being overdrawn and had never come to her to describe any concerns about cash flow issues." In response, Towle states:

Disputed. Mr. Towle had informed Dr. Kerr on several occasions that the District's bookkeeper (Sharon Batterman) was having difficulty timely reconciling the monthly statements received from the bank which related to cash management and that he had talked with the bookkeeper about this several times. Towle Dec. ¶¶ 48-49. Moreover, insufficient funds in the checking account was not a "cash flow" issue; it was a "cash management" issue. Towle Dec. ¶ 54. The purpose of taking draws on the District's short term line of credit only when funds were needed was to save interest costs and the purpose of having funds in a money market account and transferring funds to the District's checking account only when needed was to maximize the amount of interest earned by the District. *Id.* Although interest rates were higher during most of the 2007-2008 fiscal year than they were in 2008-2009, in 2007-2008, the District earned $290,728 of interest income, an amount sufficient to fund several teaching positions. *Id.* The 2008-2009 fiscal year was different because, in prior years, the District had borrowed money in the fall and then placed the full amount borrowed in investments that would earn more interest than the interest rate on the loan. *Id.* But, in 2008-2009, because of the economy, there were no suitable investments available for the District to earn interest a rate higher than the loan rate. *Id.* Therefore, the District's cash management strategy was to take draws on the line of credit and to make transfers as late as possible when funds were needed for the checking account. *Id.*

(Pl's Response to DPFF ¶ 18). Despite this lengthy response, it is still not even clear if Mr. Towle disputes whether he told Dr. Kerr about checking accounts being overdrawn. As a result of this type of response and many similar examples in Mr. Towle's submissions, the Court comes close to striking Mr. Towle's response to the proposed findings of fact in its entirety. *See Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000) (upholding District Court's striking entire response to statements of facts for being "so full of argument, evasion, and improper denials that it defeat[ed] the whole point of [the] Local Rule[s]." Findings of fact are *not* the place for legal argument.

The Court has limited time and resources, and submissions such as these do little to nothing to aid the Court in determining the undisputed facts for the purposes of summary judgment.

The Court will not, however, strike Mr. Towle's responses in this instance. As discussed more thoroughly below, the Court finds that even when taking all facts in the light most favorable to Mr. Towle, his federal claim fails as a matter of law. As such, the Court finds it wiser to allow Mr. Towle's responses to the proposed findings of fact, giving him every benefit of the doubt where disputes arise, and will address the claims on the merits instead. In the future, however, the Court strongly urges all parties before it to comply with the local rules when addressing proposed findings of fact.

The Court now turns to discuss the factual background of the case and the parties involved. Because the parties dispute so many of the proposed findings of fact, the Court will focus its discussion on the facts pertaining to the liberty claims discussed below.

### 1.1 The District Hires Towle

During the relevant time period, the District employed Mr. Towle as its Business Manager. Prior to this time, Mr. Towle was employed as the Director of Business and Financial Services of the School District of Marinette for ten years, from 1993 to 2003, and as the Director of Business and Financial Services of the School District of Westfield from 2003 until February 2007, when he resigned to accept a position as Business Manager of the School District of Brown Deer. (PPFF ¶ 3). Mr. Towle was interested in the Brown Deer Business Manager position because Brown Deer was a larger school district than Westfield, and the position would give him more responsibility, more experience with a wider variety of more complex issues, more

opportunities for professional growth including the acquisition of more knowledge and the development of new skills, and the opportunity to work in an urban area with a diverse student and community population. (PPFF ¶ 4).

The Brown Deer School District is comprised of approximately 1,600 students in grades K4-12th grade on a 63 acre campus located on 60th Street and Dean Road in Brown Deer, Wisconsin. The current operational budget is approximately $19 million dollars. (DPFF ¶ 1). The District office staff is comprised of the Superintendent, Administrative Assistant to Superintendent, Business Manager, Administrative Assistant, Payroll Specialist, Bookkeeper, Director of Pupil Services & Administrative Assistant, Director of Curriculum & Instruction & Administrative Assistant, and Director of Facilities and Administrative Assistant. Dr. Kerr is the District Administrator for the District. (SAC ¶ 2). Dr. Kerr began employment with the District as the District Administrator in July 2007. (DPFF ¶ 4).

Mr. Towle was hired by Dr. Kerr's predecessor in January 2007 and his initial employment contract ran from February 2007 to June 30, 2008. (SAC ¶ 5). Mr. Towle's contract was renewed in May 2008 to last from July 1, 2008, through June 30, 2010 ("the 2006-2008 Contract"). (DPFF ¶ 6).[3] The District drafted the contract and Mr. Towle asserts that he would not have entered into the contract if the Board had not agreed to employ him in the position of Business Manager or had suggested to him that he would not actually be allowed to perform any duties or come to work during the term of the

---

[3]Mr. Towle disputes this finding of fact and asserts that this contract contained terms materially different than the previous contract. The District, however, never claimed that the contracts were exactly the same. (*See* Pl's Response DPFF ¶ 6).

contract. (PPFF ¶ 6). The Administrator's Employment Agreement included the following provision that was not contained in the 2006-2008 Contract:

> The Board may terminate this contract and discharge the Administrator from employment for just cause provided that the Administrator has received notice in writing from the Board of its intent and the alleged reason or reasons for such discharge. Upon written request, a hearing shall be conducted with full regard for due process.

(PPFF ¶ 16). The Administrator's Employment Agreement also provided that "Renewal and non-renewal of this contract shall be governed by sec. 118.24, Wis. Stats.," and, although there are certain statutory procedures (including a hearing if requested) that have to be followed, "just cause" is not required for non-renewal of an administrator's contract. (PPFF ¶ 17).

### 1.2 The District Places Mr. Towle on Administrative Leave

On Thursday, February 5, 2009, Barb Cybele, Administrative Assistant for the Business Manager, came to Dr. Kerr with concerns about the bank wire transfer that had been done to meet the District's February 5th payroll. (DPFF ¶ 7). Ms. Cybele told her that Mr. Towle, who was out sick, had contacted payroll specialist, Sue Run, to initiate the wire transfer of $289,913.07. (DPFF ¶ 8). The parties dispute the majority of the facts surrounding this incident; in short, Mr. Towle maintains that his actions related to the wire transfer were proper, whereas the District maintains they were not. (*Compare* DPFF ¶¶ 9-14 *with* Pl's Responses).

On Friday, February 6, 2009, Mr. Towle returned to work after being absent for three days due to illness. Sue Run and Sharon Batter man (the District's bookkeeper) were not in the office that day for Dr. Kerr to interview in regard to the payroll situation. Mr. Towle did not communicate with Dr. Kerr in regard to any issues with payroll. (DPFF ¶ 15). The same day, Dr.

Kerr contacted Jean Pens, the district's bank representative at M & I Bank (now BMT Harris) to verify the payroll transfer and inquire about the district bank accounts. (DPFF ¶ 16). Ms. Pens told Dr. Kerr that the district's checking accounts were overdrawn by approximately $500,000.00, resulting in overdraft fees of approximately $1,500.00 to the district's account.[4] The parties dispute the extent to which Mr. Towle had communicated previous financial issues to Dr. Kerr in the past; these facts, however, are immaterial to the issues presented at summary judgment. (*See* DPFF ¶ 18 and Pl's Response).

On Saturday, February 7, 2009, Dr. Kerr, along with Kim Cazique, spent numerous hours reviewing Mr. Towle's emails and records from the past six months to determine if there were other concerns or problems in the operations of the business office. (DPFF ¶ 24). Dr. Kerr testified she discovered that Mr. Towle was slow to respond to bank executives and the district's auditor, had submitted late reports to the Wisconsin Department of Instruction, had failed to schedule the appraisals of school district property in order for the auditors to complete their report before the December 15th deadline to DPI, and had made significantly late payments to vendors; Mr. Towle, however, disputes this assertion and maintains his actions were proper. (*See* DPFF ¶ 25 and Pl's Response). The parties also dispute the facts surrounding Mr. Towle's use of an outside paralegal to perform labor cost

---

[4]Mr. Towle objects to this statement on the grounds of hearsay to the extent it is offered for the truth of the matter asserted. (Pl's Response to DPFF ¶ 17). In response, the District maintains that the statement is not hearsay and admissible because Dr. Kerr's statement explains the information she had at the time she placed Mr. Towle on leave. (Defs' Reply to ¶ DPFF 17). The Court agrees with the District that the statement is admissible because it is not offered for the truth of the matter asserted.

calculations; again, Dr. Kerr maintains Mr. Towle's actions were improper whereas Mr. Towle disagrees. (*See* DPFF ¶¶ 26-28 and Pl's Responses).

Dr. Kerr had been an administrator in school districts for numerous years at the time, and had never seen this type of conduct from a business manager before, nor had Dr. Kerr ever heard of a district's bank accounts being overdrawn by $500,000. (DPFF ¶ 30). In light of this information, Dr. Kerr decided to place Mr. Towle on administrative leave to determine the scope and magnitude of these issues. (DPFF ¶ 29). On Monday, February 9, 2009, Dr. Kerr met with Mr. Towle to read and give him a hand-delivered letter placing him on paid administrative leave pending an investigation into these issues. James Hecht, the Director of Pupil Services for the District, witnessed the meeting. (DPFF ¶ 39). The letter, in pertinent part, stated that Mr. Towle was relieved of his duties as the District's Business Manager, and that he was not to enter or remain on district property unless specifically requested. (PPFF ¶ 26).[5]

### 1.3    Statements About Mr. Towle's Leave

On February 10, 2009, the day after Mr. Towle was placed on leave, Dr. Kerr met with the Director of Technology, Brian Schiebach, and the Director of Library Media Services, Kara Schuerman. (DPFF ¶ 41).[6] Ms. Schuerman was also the President of the Brown Deer Education Association ("BDEA"). That

---

[5]Mr. Towle includes detailed facts about communications that occurred between the District's lawyer and Mr. Towle's lawyer shortly after Mr. Towle's placement on administrative leave. (PPFF ¶¶ 28-31). The Court, however, does not find any of these  facts material to the issues presented on summary judgment.

[6] The parties dispute Dr. Kerr's true intention for holding this meeting. Dr. Kerr maintains that she met with them to submit purchase orders and make requests for funding; Mr. Towle asserts that the reason for the meeting was to tell them about his placement on leave. (*See* DPFF ¶ 41 and Pl's Response)

Case 2:11-cv-00542-JPS   Filed 09/29/16   Page 10 of 23   Document 92

same day, on February 9, 2010, Ms. Sherman sent an email to the eleven members of the Executive Committee of the BDEA. The email stated the following, in pertinent part:

> I was asked to inform you, on behalf of Dr. Kerr, that our business manager Edward Towle has been placed on administrative leave for irregular accounting and business practices.
>
> Dr. Kerr is investigating details and working with the DPI to perform necessary budget predictions (a budget will be presented to the Finance Committee March 9th). She has some ideas as to interim business manager possibilities but we are not at that point yet.
>
> Dr. Kerr felt it important that you are made aware of the issue as you will certainly hear rumblings in your building and the community. We have no more information other than the above first statement.

(PPFF ¶ 32). On February 22, 2009, Mr. Towle received an email from Tim Nelson, an English teacher at the High School and the Chief Negotiator for the BDEA, which forwarded the email sent by Kara Schuerman. (PPFF ¶ 32). The BDEA was a legal entity entirely separate and distinct from the District and was the public employees union that represented teachers employed by the District in collective bargaining and in connection with grievances teachers might have, and which was an affiliate of the Wisconsin Education Association Council ("WEAC")—the state-wide teachers' union—which represented tens of thousands of teachers throughout Wisconsin, the National Education Association ("NEA"), and a regional UniServ unit with which other local teachers' unions in southeastern Wisconsin were also affiliated. (PPFF ¶ 33).

During the course of Mr. Towle's administrative leave, various news sources published stories about the circumstances of his employment with the District. (*See* PPFF ¶¶ 75-81) (including headlines such as, "District is paying double for business management," "Brown Deer school official, paid while on leave gets job"). Specifically, on April 27, 2010, the Milwaukee Journal Sentinel published an article with the headline "Brown Deer superintendent responds to questions on absent business manager." The article includes a complete statement by Dr. Kerr including that "I placed Mr. Towle on paid administrative leave pending an investigation into serious concerns about operations in the business office." (PPFF ¶ 79).

### 1.4    Mr. Towle Seeks New Employment

Immediately after being placed on administrative leave on February 9, 2009, Mr. Towle began to aggressively look for another position in school administration, and also applied for positions with the Wisconsin Department of Public Instruction, as well as positions in the private sector. (PPFF ¶ 89). On November 3, 2009, Dr. Kerr provided a Preliminary Notice of Consideration of Nonrenewal of Administrator's Contract to Mr. Towle. (PPFF ¶ 52). From February 9, 2009, through December 2013, Mr. Towle applied for at least 236 positions with school districts in Wisconsin, as well as in Illinois, Minnesota, Michigan, Iowa, Virginia, and Pennsylvania; positions with the Wisconsin Department of Public Instruction; and positions in the private sector. (PPFF ¶ 90). Mr. Towle has applied for positions in Beloit, Stevens Point, Bloomington, Illinois, and approximately ten positions with the Department of Public Instruction, but was never offered a position and was told the reason he was not offered a position was because of the "administrative leave" in Brown Deer. (PPFF ¶ 96).

On April 7, 2010, Mr. Towle had entered into a contract with the Board of Education of Community Consolidated School District 46 in Grayslake, Illinois, for a period of one year beginning July 1, 2010. (PPFF ¶ 69). However, when the Superintendent learned that Mr. Towle had been on administrative leave from his Business Manager position in Brown Deer, the Board of Education rescinded his contract. (PPFF ¶ 97). On April 13, 2010, Mr. Towle sent a letter requesting the Board of Education accept his resignation as of July 1, 2010, the day after the term of his Administrator's Employment Contract expired. (PPFF ¶ 68).

2.      LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

3.    DISCUSSION

The District's motion for summary judgment argues that they are entitled to summary judgment on all claims. (Defs' Opening Br., Docket #61). Mr. Towle opposes the motion and further argues that the Court should stay the federal claims and decline to exercise supplemental jurisdiction on the state law claims.(Docket #78 at 4).  As discussed below, the Court finds that Mr. Towle's only federal claim, the deprivation of a liberty interest, fails as a matter of law. In light of this ruling, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims, and will remand those claims to state court.

3.1    Due Process and the Deprivation of Liberty Interest in Employment

Mr. Towle alleges that the District deprived him of a constitutionally protected liberty interest without due process of the law. Specifically, he alleges that he was "(a) stigmatized by the Defendants' conduct, (b) the stigmatizing information was publicly disclosed, and (c) he suffered a tangible loss of employment opportunities as a result of the public disclosure." (SAC ¶ 45).

Due process of law entitles a government employee to notice and the opportunity to be heard before the government takes action calling into question the employee's "good name, reputation, honor, or integrity." *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972) (quoting *Wisconsin v. Constantineau*,

400 U.S. 433, 437 (1971). The employee is deemed to have a liberty interest, for purposes of the Due Process Clause, in his right to pursue the profession or calling of his choice. A government employee's liberty interests are implicated where in terminating the employee the government "make[s] any charge against him that might seriously damage his standing and associations in the community" or "impose[s] on him a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities." *Id.* at 573.

To enforce this liberty interest in an action under Section 1983, a discharged public employee must show: (1) he or she was stigmatized by the employer's actions; (2) the stigmatizing information was publicly disclosed; and (3) the employee suffered a tangible loss of other employment opportunities as a result of the public disclosure. *E.g., Townsend v. Vallas,* 256 F.3d 661, 669–70 (7th Cir. 2001); *Head v. Chicago Sch. Reform Bd. of Trustees,* 225 F.3d 794, 801 (7th Cir. 2000); *Strasburger v. Bd. of Educ., Hardin County Cmty. Unit Sch. Dist. No. 1,* 143 F.3d 351, 356 (7th Cir. 1998). Further, a plaintiff must demonstrate that a named defendant was the individual who made the disclosure; a "*res ipsa loquitur*like approach, while perhaps sufficient to establish that someone…published the information, does not sufficiently establish that the someone was [a named Defendant]." *McMath v. City of Gary,* 976 F.2d 1026, 1031 (7th Cir. 1992) (emphasis in original). Further, the specific stigmatizing statements must be made public; statements made to employees within a department are not considered public dissemination. *Id.* at 1035–36.

Mr. Towle alleges two separate incidents in support of his liberty interest claim: (1) the February 10, 2010 email sent to BDEA remembers; and (2) Dr. Kerr's statement to the media.

### 3.1.1   February 10, 2010 Email to BDEA

The undisputed facts show that on February 10, 2010, Dr. Kerr spoke with Ms. Schuerman, the District's Director of Library Media Services and President of the BDEA. (DPFF ¶ 41).[7] Following this meeting, Ms. Schuerman sent the email, allegedly on behalf of Dr. Kerr, to the eleven members of the Executive Committee of the BDEA. (PPFF ¶ 32). The email stated, among other things, that "Edward Towle has been placed on administrative leave for irregular accounting and business practices." (PPFF ¶ 32).

The District argues that this claim fails at the outset because the statement was not made public. Dr. Kerr made the statement to Ms. Shuerman, a District Employee, who then shared the information with the eleven ADEA members. The District argues that because the email was circulated only to District employees, the statement was not public. (*See* Defs' Opening Br. at 6, Docket #61).

"The public-disclosure element requires that the defendant actually disseminate the stigmatizing comments in a way that would reach potential future employers or the community at large." *Palka v. Shelton*, 623 F.3d 447, 454 (7th Cir. 2010). Specifically, stigmatizing "statements made to employees within a department are not considered public dissemination." *Covell v. Menkis*, 595 F.3d 673, 678 (7th Cir. 2010). In *Cheng v. Ford*, No. 15-CV-527-DRH-DGW, 2015 WL 4082865, *1 (S.D. Ill. July 6, 2015), the court found that the plaintiff had plead herself out of court at the outset because she

---

[7]The parties dispute Dr. Kerr's true intention for holding this meeting. Dr. Kerr maintains that she met with them to submit purchase orders and make requests for funding; Mr. Towle asserts that the reason for the meeting was to tell them about his placement on leave. This issue, however, is immaterial. (*See* DPFF ¶ 41 and Pl's Response).

only alleged that the defendant "disseminated [the stigmatizing] information to its own Human Resources Department or 'other hiring bodies' within the City – not the community at large or future employers." *Id.* at *4.

Here, the Court agrees with the District and finds that the email statement was not publicly disclosed. Dr. Kerr sharing information with members of the District does not constitute public disclosure. *See Covell v. Menkis*, 574 F. Supp. 2d 874, 886–87 (C.D. Ill. 2008), *aff'd*, 595 F.3d 673 (7th Cir. 2010) ("Because Cowles was affiliated with the Commission, however, that does not constitute public disclosure.") Notably, Mr. Towle does not dispute that the eleven members of the BDEA who received the email were employees of the District. (*See* DPFF ¶ 46 and Pl's Response). Instead, he focuses on the BDEA's affiliations with organizations representing thousands of union members throughout the state—namely, the Wisconsin Education Association Council and the National Education Association. (*See* ¶ PPFF 75). This argument, however, misses the mark; whether Dr. Kerr shared the alleged stigmatizing statements with people merely affiliated with members of the public is not the relevant question.

Similarly, the fact that the information eventually reached members of the public also fails to save Mr. Towle's argument. "Summary judgment is the 'put up or shut up' moment in a lawsuit," *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)), and Mr. Towle has produced no evidence that the email statements were made to anyone but District employees. As such, the Court finds that the statements were not publicly disclosed, and Mr. Towle's liberty claim as to the email statement fails as a matter of law.

### 3.1.2  Dr. Kerr's Statement to the Media

Second, Mr. Towle alleges he was deprived of a liberty interest when Dr. Kerr made a media statement on April 26, 2010, that Mr. Towle had been placed on "paid administrative leave pending an investigation into serious concerns about operations in the Business Office." ( SAC ¶ 26). The District does not argue, nor could it, that the statements were not public; instead, it argues the statement does not constitute the type of sufficiently stigmatizing statement that gives rise to a viable liberty interest claim. (Defs' Opening Br. at 6-9, Docket #61).

"A person has no cognizable liberty interest in his reputation; consequently, allegations which merely damage one's reputation do not implicate a liberty interest." *Beischel v. Stone Bank Sch. Dist.*, 362 F.3d 430, 439 (7th Cir. 2004) (citing *Paul v. Davis*, 424 U.S. 693 (1976)). This is true even when a statement causes serious impairment of one's future employment. *Hojnacki v. Klein–Acosta*, 285 F.3d 544 (7th Cir. 2002). However, when a state actor attacks a person's good name in a manner that makes it "virtually impossible" for the person to find new employment, that person's liberty interest to pursue his occupation is infringed. *Townsend,* 256 F.3d at 661. The alleged defamatory statements must be false statements of fact. *Strasburger v. Bd. of Educ. of Hardin Cnty.*, 143 F.3d 351 (7th Cir. 1998). In such a case, a hearing is required. *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603 (7th Cir. 2002).

The District puts forth two arguments as to why Dr. Kerr's media statements were not so stigmatizing to warrant a liberty interest. First, it argues that the statement does nothing more than reiterate the circumstances or concerns leading to a suspension. The District relies upon *Terry v. Woods,* 803 F. Supp. 1519 (E.D. Wis. 1992), where the court found statements were not

so stigmatizing to give rise to a liberty interest. There, the defendant told the media that the plaintiff had been "suspended with pay pending an investigation of a report that he scolded a teacher for calling firefighters after she smelled smoke." *Id.* at 1524. Additionally, the defendant stated, "These are serious charges, and we want to deal with them as soon as we can." *Id.* The court found the statements did not seriously damage the plaintiff's reputation, and noted that "although the suspension may have lent some legitimacy to the…charges, the defendants in suspending Terry did not explicitly or implicitly adopt those charges." *Id.* Second, the District argues that regardless, Dr. Kerr's statement did not give rise to a liberty interest requiring a hearing because it only expressed concerns about the operation and management of the Business Office.

Here, the Court finds that Dr. Kerr's statement to the media was not sufficiently stigmatizing to give rise to a liberty interest. Mr. Towle argues, without any support, that Dr. Kerr's statement attacked his "honesty, reputation, and good name." (Pl's Opp. at 39, Docket #78). The Court would not, however, characterize the statement, "serious concerns about operations in the Business Office," in this light. The statement itself is quite general, and fails to give any specific detail about what type of concerns the District had about Mr. Towle. Certainly, the statement *could* mean that the District questioned Mr. Towle's reputation and honesty, but it could also mean the District merely questioned his business management skills. And, the Seventh Circuit has explicitly held that "'a mere charge of mismanagement is not enough to give rise to a liberty interest requiring a hearing. [citation omitted] Liberty is not infringed by a label of incompetence or a failure to meet a specific level of management skills.'" *Uchny v. Merton Cmty. Sch. Dist.* 249 F.3d

686, 704 (7th Cir. 2004) (quoting *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1348 (7th Cir.1995)); *accord Head,* 225 F.3d at 802 (upholding dismissal of liberty interest claim where defendants made charges of "ineptitude and professional inadequacies); *Hadley v. Cnty. of DuPage*, 715 F.2d 1238, 1247 (7th Cir. 1983) (finding that even a statement of mismanagement did "not foreclose other employment opportunities and therefore did not require the County Board to provide a hearing").

Within the Seventh Circuit, cases finding a liberty interest contain far more stigmatizing allegations than having "serious concerns about operations in the Business Office." *See, e.g., Lashbrook*, 65 F.3d at 1348–49 (listing charges of immorality, dishonesty, alcoholism, disloyalty, Communism, or subversive acts as the sort of charges that infringe an employee's liberty); *Ratliff v. City of Milwaukee*, 795 F.2d 612, 625–26 (7th Cir. 1986) (concluding that charges of untruthfulness, neglect of duty, and insubordination against a police officer impose sufficient stigma). In this case, the Court is unconvinced that Dr. Kerr's statement to the media were sufficiently stigmatizing to essentially blacklist Mr. Towle from his chosen profession. Significantly, this particular statement did not occur until April 26, 2010, and the undisputed facts show that Mr. Towle sought new employment without success beginning in February of 2009. (*See* PPFF ¶ 90). As such, the Court declines to place the blame for Mr. Towle's inability to obtain employment on this one statement that occurred approximately fifteen months into his job search.

In sum, the Court finds that Mr. Towle's liberty claim regarding Dr. Kerr's statement to the media fails as a matter of law. As such, the Court will grant the District's motion for summary judgment as to Mr. Towle's constitutional liberty interest claim.

### 3.2 State Law Claims

As noted above, Mr. Towle has alleged various state law claims against the defendants, the intricacies of which the Court declines to elaborate on because the Court declines to exercise supplemental jurisdiction over those claims. This is the proper course because the plaintiff has no viable federal claims remaining. 28 U.S.C. § 1367(c)(3); *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) ("When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims."). The Court certainly recognizes that, in some circumstances, exercising supplemental jurisdiction may be proper at this stage, however this is not that case.

To begin, this branch of the Court only recently became involved with this case. Thus, unlike many cases where a district judge may be in the best position to preside over state law issues due to his or her familiarity with the issues, this Court is not in that position. This litigation has spanned over five years at this juncture, but the Court became involved only about a month ago. Additionally, as Mr. Towle highlights in his opposition, it appears that the parties' arguments may involve novel arguments regarding state law. Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining state law claims, and the Court will remand those claims to state court.

### 4. MOTION TO CLARIFY OR AMEND COMPLAINT

As briefly discussed above, on August 30, 2016, well after the motion for summary judgment was briefed, Mr. Towle filed a motion to clarify the scope of the first and fifth claims—the breach of contract claim and the due

process claim under the United States Constitution—or, alternatively, for the Court to grant him leave to file a third amended complaint. (Docket #89 at 1). The Court has already addressed the clarification issue, and will now deny Mr. Towle's motion to amend the complaint for a third time.

The deadline to amend pleadings in this case was April 26, 2013. (Docket #34). Now, over three years later, and after the lengthy briefing of summary judgment, Mr. Towle wishes to amend his complaint that was originally filed in June 2011. A motion to amend rests "purely within the sound discretion of the district court." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008). Reasons for denying such a motion include undue delay, prejudice to the non-moving party, or futility of the pleading. *Id.* The Court need not dwell on this issue because it is clear that the District would be prejudiced by allowing new claims at this late stage in the litigation. Thus, the Court will deny Mr. Towle's motion to amend the complaint.

5.      CONCLUSION

In sum, the Court finds that Mr. Towle's federal liberty interest claim fails as a matter of law, and the Court will grant summary judgment on this claim. Because no other federal claims remain, the Court declines to exercise supplemental jurisdiction over the remaining state law claims, and the Court will remand those claims to the Milwaukee County Circuit Court from where this action was removed.

Accordingly,

IT IS ORDERED that the District's motion for summary judgment (Docket #60) be and the same is hereby GRANTED in part as more thoroughly described above;

IT IS FURTHER ORDERED that the Court declines to exercise supplemental jurisdiction over the plaintiff's state law claims;

IT IS FURTHER ORDERED that Mr. Towle's motion to clarify scope or, alternatively, to amend the second amended complaint (Docket #88) be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that the remaining state law claims in this action be and the same are hereby REMANDED to the Milwaukee County Circuit Court for further proceedings.

The Clerk of Court is directed to take all appropriate action to effectuate the remand.

Dated at Milwaukee, Wisconsin, this 29th day of September, 2016.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge